UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOUISE B., | ) | |
| | ) | |
| Plaintiff, | ) | No. 21-cv-3570 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| KILILO KIJAKAZI, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Louise B.[1] appeals the decision of the Commissioner of the Social Security

Administration ("Commissioner") denying her application for disability benefits.  The parties have

filed cross motions for summary judgment.[2]  As detailed below, Plaintiff's motion for summary

judgment (Dkt. 16) is DENIED and the Commissioner's motion for summary judgment (Dkt. 21)

is GRANTED.  The decision of the Commissioner is affirmed.

**I.    Background**

Plaintiff filed for supplemental security income on November 18, 2013, alleging a

disability onset date of May 1, 2013.[3]  (Administrative Record ("R.") 125.)  Plaintiff's application

was denied initially and upon reconsideration.  (*Id.*)  Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ"), which was held on September 1, 2016.  (*Id.*)  On November

3, 2016, ALJ David Skidmore issued an unfavorable decision finding that Plaintiff was not

---

[1]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2]    Plaintiff filed a Brief in Support of Reversing or Remanding the Commissioner's Decision, and Defendant filed a Response to Plaintiff's Motion for Summary Judgment, which this Court construes as cross motions for summary judgment.

[3]    Plaintiff later amended her onset date to December 11, 2017.  (R. 13.)

disabled as defined in the Social Security Act. (R. 125-134.) The Appeals Council remanded the case back to the ALJ for further proceedings. (R. 13) A second hearing was held before ALJ Nathan Mellman on December 8, 2020. On December 29, 2020, the ALJ once again found that Plaintiff was not disabled under the Social Security Act. (R. 13-30.) On May 4, 2021, the Appeals Council denied Plaintiff's request for review (R. 1-4), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g); *see Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

The ALJ's opinion followed the five-step analytical process required by 20 C.F.R. § 416.920. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 11, 2017. (R. 15.) At Step Two, the ALJ found Plaintiff had the severe impairments of osteoarthritis, degenerative disc disease of the cervical spine, and bipolar disorder/depression.[4] (R. 16.) At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 17.) Before Step Four, the ALJ found Plaintiff had the RFC to perform less than the full range of light work with the following limitations: occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; sit, stand, and walk for six hours in a typical eight-hour workday; push and pull as much as she can lift and carry; frequently climb ramps, stairs, ladders, ropes, and scaffolds; frequently stoop kneel, crouch, and crawl; can perform simple, routine tasks; can frequently interact with co-workers and members of the general public. (R. 20.) At Step Four, the ALJ determined Plaintiff had no past relevant work. (R. 28.) At Step Five, the ALJ found there were jobs in significant numbers in the national economy that Plaintiff can perform, given her age, education, work experience, and residual

---

[4]    The ALJ also found Plaintiff has several non-severe impairments, none of which are at issue here.

functional capacity. (R. 28.) In light of these findings, the ALJ found Plaintiff was not disabled under the Social Security Act. (R. 29.)

## II.      Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). A court's scope of review in these cases is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation and signals omitted). The Court reviews the ALJ's decision directly, but plays an "extremely limited" role in that the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute (its) own judgment for that of the Commissioner." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted).

## III.      Discussion

Plaintiff raises three issues she contends require remand: 1) the ALJ failed to properly evaluate medical opinion evidence; 2) the ALJ's finding that Plaintiff could perform unskilled work with frequent interactions with others was unsupported by substantial evidence; and 3) the ALJ relied upon improper inferences in discounting Plaintiff's statements. As discussed below, the Court rejects these arguments and finds the ALJ adequately supported his opinion.

A.     **The ALJ Properly Evaluated Medical Opinion Evidence.**

For claims filed after March 27, 2017, the old "treating physician rule"[5] has been replaced by 20 C.F.R. § 404.1520c. Treating physicians' opinions are no longer entitled to presumptive controlling weight; the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Now, the Commissioner does not "articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your record;" instead, the ALJ "will articulate how [the ALJ] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in" the regulation. 20 C.F.R. § 404.1520c(b)(1). Consistency and supportability "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be," and, "[t]herefore we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ may consider the other factors (*e.g.*, the treating relationship or the provider's specialty), but is not required to do so. *Id.*

There are several opinions that the ALJ considered, and Plaintiff takes issue with each. The first is the reconsideration-level state agency psychological consultant, Joseph Cools, Ph.D. In pertinent part, the ALJ wrote the following regarding Dr. Cools's opinion:

> I find persuasive the opinions offered by [Dr Cools], who determined that the claimant retains the capacity to sustain concentration, persistence, and pace for simple and some detailed tasks with mild complexity, given routine breaks, and minimal to moderate work-related responsibilities. He also opined that the claimant retains the ability to interact briefly/superficially

---

[5]     20 C.F.R. § 404.1527.

with coworkers and supervisors. . . . [D]r. Cools' determinations are generally consistent with the medical evidence of record as a whole, which demonstrates significant, but, ultimately, non-disabling mental pathologies and symptoms as discussed above. Dr. Cools' limitations to brief or superficial interactions are not support (sic) by the record, in part, because the vast majority of the claimant (sic) mental status examinations reflect that she exhibited normal mood, affect, orientation, insight, judgement, or overall psychological functioning throughout her period of alleged disability.

(R. 25 (citations omitted).)

Plaintiff argues that the ALJ erred by failing to explain why Plaintiff's mental pathologies were "significant," but non-disabling. (Dkt. 16 at 13.) However, elsewhere in the opinion, the ALJ did explain why Plaintiff's bipolar disorder and depression were severe impairments that nonetheless do not preclude Plaintiff from working.[6] For example, the ALJ noted that "claimant's mental health providers opted for conservative treatment consisting of counseling and psychotropic medication, with no indication that a more serious course of action was contemplated." (R. 24.) The ALJ also cited numerous times when Plaintiff "denied psychiatrist (sic) symptoms, including anxiety, depression, and insomnia" and that "various treatment providers noted that she exhibited normal memory, orientation, mood, affect, insight, judgement, attention, fund of knowledge, or overall psychological functioning throughout her period of alleged disability." (R. 24 (citations omitted).) These examples constitute a valid explanation for why the ALJ found the Plaintiff's symptoms severe but not disabling.

Plaintiff further contends that the ALJ erred in rejecting the portion of Dr. Cools's opinion limiting Plaintiff to only brief and superficial interactions. To support her argument, Plaintiff points to two mental status examinations where Plaintiff demonstrated abnormal psychiatric findings. However, as noted above, the ALJ cited several instances where Plaintiff's examinations

---

[6] This is the portion of the opinion the ALJ referenced when he wrote "as discussed above."

were unremarkable.  It is not the Court's job to re-weigh the evidence here.  The animating question
in reviewing the ALJ's treatment of medical opinion evidence is whether the ALJ appropriately
considered the requisite factors of consistency and supportability.  Per the excerpt above, the ALJ
adequately considered and supported his findings regarding those factors, and the Court will not
remand on that basis.

Next, the ALJ considered the opinions of the internal medicine consultative examiners,
Drs. Palacci and Shipley.  The ALJ found their opinions unpersuasive, writing:

> Dr. Palacci and Dr. Shipley conducted thorough diagnostic evaluations and
> provided opinions that were somewhat consistent with their clinical
> observations.  However, their determinations were based on a one-time
> evaluation, with the claimant's subsequent medical records demonstrating
> the claimant's improvement in her ability to ambulate as discussed above.
> For example, it is inconsistent with the claimant's appearance without a
> cane at the June 2019 hearing and her reports of work she did for her
> landlord after the amended onset date.  Additionally, their opinions are
> vague in nature and offer little assistance in assessing the claimant's residual
> functional capacity throughout her relevant period of alleged disability.
> Lastly, Dr. Palacci's opinion was offered prior to the relevant period of
> alleged disability and it is too remote in time to offer much assistance in
> evaluating the claimant's current residual functional capacity.

(R. 27.)

Plaintiff maintains that it was inappropriate for the ALJ to reject the evaluators' observation
that Plaintiff needed an assistive device to walk 50 feet, claiming that the ALJ's finding was based
solely on Plaintiff not using a cane at the administrative hearing.  (Dkt. 16 at 14.)  However, the
ALJ's finding was not only based on the administrative hearing, but a longitudinal view of the
record, which the ALJ concluded showed that Plaintiff's ambulation issues ameliorated over time.
For instance, the ALJ noted Plaintiff's reported ability to lift up to 50 pounds and walk up to eight
blocks from her home while working for her landlord, as well as the medical records in August

2018, February 2019, and March 2019 noting no problems with Plaintiff's walking.[7]  (R. 21-22.)
In short, the ALJ relied on significant evidence beyond his own observations to support his finding
that the opinions of Drs. Palacci and Shipley were unpersuasive.

Plaintiff also contends the ALJ erroneously rejected the opinions of Drs. Palacci and
Shipley "endors[ing] reaching limitations with the right upper extremity" and instead "chose to
eliminate any restrictions of any kind regarding that extremity."  (Dkt. 16 at 14.)  The ALJ
explained that finding earlier in the opinion, noting that, following a stroke in 2018, Plaintiff
showed consistent improvement and consistently "made no mention of right upper extremity pain
or right hand weakness" by February 2019.  (R. 16.)  This is sufficient to support the ALJ's
rejection of the opinions of Dr. Palacci and Dr. Shipley on the issue of Plaintiff's right arm
limitations.  Again, it is not the Court's job to reconsider evidence; so long as the ALJ considers
the requisite factors and has adequate support to bolster the ALJ's conclusions, the Court will not
reverse the decision.

Finally, the ALJ discussed the opinion of Plaintiff's treating physician, Dr. Terrell.  Dr.
Terrell provided two opinions; the first was a Musculoskeletal Defects Report from June 2018
(R. 847-849), and the second was a Physical Residual Function Capacity Statement from June
2019 (R. 994-997).  Regarding the first opinion, the ALJ rejected the portion that suggested
Plaintiff has significant limitations in her right upper extremity, but accepted the portion that found
Plaintiff did not need an assistance device to walk.  The ALJ adequately discussed the requisite
factors and the Court has already discussed the evidence the ALJ relied on to support his
conclusion that Plaintiff's right arm and hand issues improved over time and she did not need a
cane.

---

[7]    Drs. Palacci and Shipley performed their evaluations in December 2017 and May 2018, respectively.  (R. 22.)

The sole issue Plaintiff raises regarding Dr. Terrell's second opinion is that the ALJ "accepted what he assumed to be an opinion as to no manipulative limitations simply because Dr. Terrell left that section blank." (Dkt. 16 at 15.) Plaintiff further states that "Dr. Terrell never opined that Plaintiff had no handling or fingering limitations." (*Id.*) That is false. The questionnaire asks: "[d]oes your patient have significant limitations with reaching, handling, or fingering?" (D. 996.) Dr. Terrell checked the box for "no." (*Id.*). As such, the Court rejects Plaintiff's argument on this front.

In sum, while Plaintiff disagrees with the conclusion reached by the ALJ, the Court cannot say that the ALJ failed to properly analyze the medical opinions as required by the Social Security Regulations. The Court will not remand on this basis.

**B.    The ALJ's Finding that Plaintiff Could Perform Unskilled Work with Frequent Interactions with Others Was Supported by Substantial Evidence.**

According to Plaintiff, "[t]he ALJ launched his undermining of Plaintiff's mental limitations at Step Three, with his assessment of the so-called Paragraph B criteria." (Dkt. 16 at 9.) To determine whether a mental impairment meets or equals listing level severity at Step 3 of the sequential analysis, a plaintiff must prove she meets the severity criteria of either paragraph B or C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. To satisfy the paragraph B criteria, a plaintiff must demonstrate an "[e]xtreme limitation of one, or marked limitation of two" of four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. *Id.*

Plaintiff's brief only discusses two of the ALJ's Paragraph B findings: the moderate limitation in concentrating, persisting, or maintaining pace and the moderate limitation in interacting with others. First, the Court notes that Plaintiff admits she "does not claim listing level

severity." (Dkt. 16 at 9.)  The Court is perplexed how Plaintiff can admit she doesn't meet a listing under Step 3 while simultaneously arguing that the ALJ's Step 3 findings were erroneous and require remand.  Nonetheless, the Court does not believe that Plaintiff's arguments are meritorious.

Regarding concentrating, persisting, or maintaining pace, the ALJ noted that Plaintiff's testimony and medical records established that she suffered from fatigue and persistent sadness, but also "the claimant's various mental health providers and medical examiners continuously observed that she had normal or only slightly diminished memory, orientation, thought processes, though content, insight, as well as intellectual and neurologic functioning throughout her period of disability." (R. 19.)  Plaintiff argues that the ALJ mischaracterized the record, citing two mental status examinations that demonstrated abnormal psychiatric findings, such as rigid posture, frowning expressions obsessive thought content, and limited judgement and insight.  (Dkt. 16 at 10.)  Plaintiff acknowledges that it is not the Court's role to re-weigh evidence yet asks the Court to do just that by crediting the evidence Plaintiff cites over the evidence the ALJ relied on to reach his conclusions.  The Court agrees with Defendant that the fact the "ALJ 'engaged with both sides of the record and weighed the evidence in a different way than plaintiff would have liked' is not grounds for reversal." (Dkt. 21 at 5 (quoting *Bertha M. v. Saul*, 395 F. Supp. 3d 963, 971-72 (N.D. Ill. 2019)).)  The ALJ had substantial evidence to support his finding in the domain of concentrating, persisting, or maintaining pace, and the Court will not overturn that decision.

The same analysis applies to the domain of interacting with others.  The ALJ noted the record shows Plaintiff suffered from symptoms such as social withdrawal, irritability, and difficulty interacting with others, but "various mental health providers and physicians in the record often noted that the claimant denied psychological symptoms" and "the claimant maintains meaningful friendships, uses public transportation, and is able to function independently outsider her home." (R. 19.)  Plaintiff cited the same two mental status examinations to bolster her

9

argument that the ALJ erred in finding moderate limitations in interacting with others. Once again, the Court finds the ALJ considered evidence that both supported and cut against his ultimate conclusions, and supported his findings with substantial evidence in the administrative record. The Court will not remand on this basis.

Plaintiff further argues the ALJ erred by not adequately incorporating the limitations caused by Plaintiff's moderate deficits in the aforementioned domains into the RFC finding. First, Plaintiff posits that the RFC limitation to "simple, routine tasks" does adequately account for a moderate limitation in concentrating, persisting, or maintaining pace. However, this argument was recently rejected by the Seventh Circuit. In *Palvicek v. Saul*, the court noted:

> A "moderate limitation" is defined by regulation to mean that functioning in that area is "fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1. As the Commissioner points out, "fair" in ordinary usage does not mean "bad" or "inadequate." So a "moderate" limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace.

994 F.3d 777, 783 (7th Cir. 2021). As such, the Court finds the moderate limitation in concentrating, persisting, or maintaining pace in this case was adequately accommodated by limiting Plaintiff to simple, routine tasks.

Finally, Plaintiff claims "limiting a person's interactions with others does not necessarily capture her temperamental deficiencies and limitations in concentration, persistence, and pace." (Dkt. 16 at 9 (citing *Moreno v. Berryhill*, 882 F.3d 722, 728-31) (7th Cir. 2018)). While that might be true in a general sense, Plaintiff does not explain how, with respect to Plaintiff *in this case*, the RFC limitation to frequent interaction with coworkers and the general public fails to accommodate Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace. Without more, the Court will not overturn the ALJ's decision on this basis. The Court notes that the ALJ supported this RFC limitation with substantial evidence on the record, mentioning Plaintiff's

10

ability to maintain friendships and function independently outside of her home. (R. 19.) The Court rejects Plaintiff's argument that the ALJ's finding that Plaintiff could perform unskilled work with frequent interactions is unsupported by substantial evidence and denies her motion on this basis.

### C. The ALJ Adequately Assessed Plaintiff's Statements

Plaintiff also asserts that the ALJ erred in assessing Plaintiff's subjective statements regarding her symptoms. If "an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

First, Plaintiff writes "the ALJ extrapolated from evidence that [the symptoms related to Plaintiff's mental impairments] can be attributed to situational stressors and physical conditions, the inference being that documented limitations are either non-existent or irrelevant." (Dkt. 16 at 11.) Far from finding that mental limitations were "non-existent or irrelevant," the ALJ included mental limitations in the RFC by allowing for only simple, routine tasks and no more than frequent interaction with co-workers and the general public. (R. 20.) Thus, the Court rejects this argument.

Second, Plaintiff erred in analyzing Plaintiff's subjective symptoms because "the ALJ cited to what he characterized as 'conservative treatment' with counseling and medication, along with repeated non-compliance and gaps in psychiatric treatment to undermine the severity of Plaintiff's psychiatric symptoms." (Dkt. 16 at 12.) According to Plaintiff, "non-compliance and gaps in treatment are often defining features of severe mental illness." (*Id*.) Although SSR 16-3p notes that mental impairments may hinder compliance with treatment, Plaintiff has presented no evidence or made any argument demonstrating how Plaintiff's mental impairments caused the gaps in treatment and non-compliance noted by the ALJ. Without more, Plaintiff's argument is pure conjecture and fails to demonstrate that the ALJ's determination that non-compliance was indicative of less severe symptoms is patently wrong.

Last, Plaintiffs reiterates that "the ALJ's repeated assertion that Plaintiff frequently denied symptoms, and that there were many 'normal' findings, is misleading." (Dkt. 16 at 12.) The ALJ properly cited those findings and relied on them in reaching his conclusion. The essence of Plaintiff's argument is that those findings should have been given less weight by the ALJ, which is not the appropriate role of the Court on review. The Court rejects this argument and denies Plaintiff's motion on this issue.

## IV. Conclusion

As detailed above, Plaintiff's motion for summary judgment (Dkt. 16) is DENIED and Defendant's motion for summary judgment (Dkt. 21) is GRANTED.

**ENTERED:   September 30, 2022**

Susan E. Cox,
United States Magistrate Judge

12